Filed 5/20/22  P. v. Gonzales CA2/4
Opinion following transfer from Supreme Court

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

THE PEOPLE,

    Plaintiff and Respondent,

v.

ROBERT GONZALES,

    Defendant and Appellant.

B304024
(Los Angeles County
 Super. Ct. No. NA072796)

OPINION FOLLOWING
TRANSFER FROM
SUPREME COURT

APPEAL from an order of the Superior Court of Los Angeles County, Stephen A. Marcus, Judge.  Reversed and remanded.

Deborah L. Hawkins, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Melissa A. Mandel, Supervising Deputy Attorney General, Lynne G. McGinnis and Joseph C. Anagnos, Deputy Attorneys General, for Plaintiff and Respondent.

This appeal is from the trial court's summary denial of defendant and appellant Robert Gonzales's petition under Penal Code section 1170.95 seeking resentencing on his conviction for second degree murder.[1]  We affirmed the court's summary denial in a previous opinion (*People v. Gonzales* (Jan. 26, 2021, B304024) [nonpub. opn.] (*Gonzales II*)).  Thereafter, the Supreme Court granted review and transferred the matter back to us with directions to vacate the decision and reconsider the cause in light of Senate Bill No. 775 (Stats. 2021, ch. 551) (S.B. 775) and *People v. Lewis* (2021) 11 Cal.5th 952 (*Lewis*).

We vacate our prior opinion in *Gonzales II* and, after reconsidering the cause, agree with the parties that the trial court erred by summarily denying appellant's petition for resentencing.  We reverse the order and remand the matter to the trial court with directions to issue an order to show cause and proceed in accordance with section 1170.95, subdivision (d).

## FACTUAL BACKGROUND[2]

1.  *Prosecution Evidence*

Appellant was part of a group of gang members who killed Christopher Ash, a 204th Street gang member accused of "snitching" on another 204th Street gang member (Jonathan Fajardo) regarding the

---

[1]     Undesignated statutory references are to the Penal Code.

[2]     We recite the factual and procedural background from *Gonzales II* and appellant's direct appeal (*People v. Gonzales* (Aug. 13, 2013, B237860) [nonpub. opn.] (*Gonzales I*)).

murder of Cheryl Green. In separate proceedings, Fajardo, Daniel Aguilar, and Raul Silva were convicted for first degree murder in connection with Ash's murder.[3]

A.   *The Green Murder*

On December 15, 2006, Fajardo fired on a group of individuals gathered in the driveway of a home, killing Green and wounding three other individuals. As part of an investigation, police officers executed search warrants and searched the residences of various individuals connected to the 204th Street gang. During a search of Ash's apartment, the police took Ash into custody for questioning and escorted seven other individuals, including Fajardo, Aguilar, and Jose Covarrubias, out of Ash's apartment.

B.   *The Ash Murder*

Covarrubias, another member of the 204th Street gang and accomplice in Ash's killing, was the key prosecution witness at trial.[4] According to Covarrubias, Ash was murdered inside Silva's residential garage on December 28, 2006.

---

[3]   At appellant's trial, gang experts established that despite being a member of a different gang (the Fries Street gang), appellant acted for the benefit of the 204th Street gang during the commission of Ash's murder.

[4]   In exchange for testifying truthfully against his accomplices, Covarrubias pled guilty to voluntary manslaughter and was sentenced to 22 years imprisonment.

3

In the late afternoon of December 28, 2006, Covarrubias and three other 204th Street gang members (Silva, Aguilar, and Eugenio Claudio) drove to Silva's house. The men entered the garage and saw appellant (whom Covarrubias had never met before) and an unidentified woman. After the woman left a few minutes later, Fajardo and Juan Carlos Pimentel, another member of the 204th Street gang, arrived at the garage. Pimentel pulled Covarrubias aside, at which time Covarrubias told him that he believed Ash was a snitch.

According to Covarrubias, all seven men—including appellant—discussed the matter together. Pimentel stated, "[w]e're gonna [*sic*] take care of Christopher Ash because of some snitching." Everyone agreed that Aguilar would bring Ash to the garage, where he would be killed. Appellant offered to drive Aguilar to pick up Ash, and before leaving, appellant gave Covarrubias and Pimentel a knife.[5]

Approximately 20 minutes later, appellant and Aguilar returned to the garage with Ash. After Ash entered the garage, Fajardo struck him from behind with the butt of a shotgun. According to Covarrubias, Ash replied, "What the fuck? I'm not a snitch" before appellant, Aguilar, Silva, and Claudio rushed over and began punching him. Pimentel told everyone to calm down. As he walked Ash toward a Pepsi machine, Pimentel stabbed Ash in the neck, causing him to fall down. Pimentel stabbed Ash in the chest, and Covarrubias stabbed Ash in the stomach before vomiting and dropping the knife.

---

[5]     Covarrubias provided ambiguous and conflicting statements about appellant furnishing a knife.

Appellant then "pushed [Covarrubias] to the side," picked up the knife, and rapidly stabbed Ash "a lot of times" in the stomach before Pimentel turned Ash over and stabbed him in the back. The men wrapped Ash's body in a tarp and blanket, and placed the body inside a van. Fajardo and Pimentel left in the van while the other men, including appellant, stayed behind to clean up the garage with water and paint thinner. The police discovered Ash's body the same evening. The body sustained 11 stab wounds to the chest and 32 to the abdomen.

The prosecution played for the jury a February 7, 2007 interview between appellant and the police wherein he provided inconsistent and false statements about the murder.

2. *Defense Evidence*

Appellant testified on his own behalf and denied any involvement in Ash's murder. Appellant denied hearing a conversation about planning to stab someone. He agreed to pick up Aguilar's "friend," and when they arrived at the garage, appellant saw someone hit Ash in the back of the head with an object. At that point, appellant left and went inside Silva's residence.

3. *Information, Verdict, and Sentence*

Appellant was charged with first degree murder (§ 187, subd. (a)), three special circumstances allegations, an allegation of personal use of a deadly weapon (a knife) (§ 12022, subd. (b)(1)), and a gang enhancement (§ 186.22, subd. (b)(1)(C)).

5

The jury was instructed on multiple theories of culpability for murder, including first degree premeditated murder, second degree express malice murder, and second degree murder based on a homicide that was the natural and probable consequences of an intentional act (either assault with a deadly weapon or intimidating a witness by force) committed with conscious disregard for human life.

By general verdict on May 3, 2011, the jury acquitted appellant of first degree murder, but convicted him of second degree murder. The jury found the gang enhancement to be true, and found the personal use of a deadly weapon not true. Appellant was sentenced to 15 years to life.

## PROCEDURAL BACKGROUND

Defendant challenged the sufficiency of the evidence to support his murder conviction in *Gonzales I.* He argued that the jury, by acquitting him of first degree murder, "necessarily rejected Mr. Covarrubias' testimony" that appellant was part of a group that agreed to kill Ash. Appellant also argued that the jury could have only reached its verdict on second degree murder based on the natural and probable consequences doctrine to which no evidence was presented that he intended to aid and abet an assault or witness intimidation. (*Gonzales I, supra,* at p. 5.)

We rejected these arguments and affirmed appellant's conviction. Without determining whether the evidence supported a natural and probable consequences theory, we concluded that "substantial evidence support[ed] the theory of second degree murder based upon the theory

6

of a homicide committed with malice aforethought." (*Gonzales I, supra,* at p. 6.) Our conclusion was based on "more than ample evidence" from which the jury reasonably could have concluded that after appellant, Aguilar and Ash returned to the garage and Fajardo hit Ash on the back of the head, appellant "*joined in the fatal assault upon Ash by stabbing him multiple times.*" (*Ibid.*, original italics.) Our conclusion, we held, was not undermined by the jury's not true finding on the personal use of a deadly weapon. (*Id.* at p. 6, fn. 15, citing *People v. Brown* (1989) 212 Cal.App.3d 1409, 1421, overruled on another ground in *People v. Hayes* (1990) 52 Cal.3d 577, 628, fn. 10; *People v. Santamaria* (1994) 8 Cal.4th 903, 911; *People v. Lewis* (2001) 25 Cal.4th 610, 654–656.)

Following the enactment of Senate Bill No. 1437 (Stats. 2018, ch. 1015) (S.B. 1437), appellant filed a petition for resentencing under section 1170.95, which provides that persons who were convicted under theories of felony murder or murder under the natural and probable consequences doctrine, and who could no longer be convicted of murder following the enactment of S.B. 1437, may petition the sentencing court to vacate the conviction and resentence on any remaining counts. (Stats. 2018, ch. 1015, § 1, subd. (f).)

In his petition for resentencing, appellant stated that an information had been filed against him that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine; at trial, he was convicted of second degree murder pursuant to the felony-murder rule or the natural and

7

probable consequences doctrine; and he could not now be convicted of second degree murder because of the changes made to sections 188 and 189. Appellant requested that counsel be appointed on his behalf.

The trial court appointed counsel for appellant, received briefing by the parties, and held a hearing on his petition. Following the hearing, the trial court summarily denied the petition. Consistent with our prior holding in *Gonzales I*, the court reasoned that appellant had failed to make a prima facie showing because the jury could have convicted him of second degree malice aforethought murder. The court also reasoned that under the facts of the case, appellant could have been convicted as an aider and abettor to murder and conspiracy to commit murder even though the jury was never presented with either theory.

We affirmed the order summarily denying appellant's petition in *Gonzales II*. In our decision, we found that the trial court had erred by engaging in judicial factfinding to find appellant culpable of theories that were neither charged nor presented to the jury. (*Gonzales II*, *supra*, at p. 5.) However, we found the error to be harmless based on our prior holding in *Gonzales I*, in which we found substantial evidence to support appellant's conviction based on second degree malice aforethought murder. (*Gonzales II*, *supra*, at pp. 5–6.)

Appellant petitioned for review in the Supreme Court. On February 23, 2022, the Supreme Court granted review and transferred the matter back to this court with directions to vacate *Gonzales II* and reconsider the cause in light of S.B. 775 and *Lewis*, *supra*, 11 Cal.5th

952. In supplemental briefing filed with this court, appellant and the Attorney General agree that we must reverse and remand the order summarily denying appellant's petition.

## DISCUSSION

Having reconsidered the cause as directed, we agree with the parties and reverse and remand the trial court's order.

The current version of section 1170.95 permits those convicted of murder under the natural and probable consequences (or other theory under which malice is imputed based solely on the person's participation in a crime) to petition the sentencing court to vacate their conviction, and to be resentenced on any remaining counts. (See §§ 1170.95, subd. (a), 188, 189.)

Upon the filing of a facially sufficient petition, the court must appoint counsel for the petitioner, if requested, allow the parties to file briefs, and determine whether the petitioner has made a prima facie showing of entitlement to relief. (§ 1170.95, subd. (c); see *Lewis*, *supra*, 11 Cal.5th at pp. 962–963, 966.)

During this prima facie stage of review, the trial court "may look at the record of conviction . . . to determine whether a petitioner has made a prima facie" showing. (*Lewis*, *supra*, 11 Cal.5th at p. 971.) However, "the prima facie inquiry under subdivision (c) is limited. . . . '[A] court should not reject the petitioner's factual allegations on credibility grounds without first conducting an evidentiary hearing.' [Citations.]" (*Ibid*.) Appellate opinions, generally considered to be part of the record of conviction, "'might not supply all answers'" during this

preliminary stage of review. (*Id.* at p. 972, quoting *People v. Woodell* (1998) 17 Cal.4th 448, 457.) Despite the trial court's ability to review a petitioner's record of conviction at this stage, the court "should not engage in 'factfinding involving the weighing of evidence or the exercise of discretion.' [Citation.]" (*Lewis, supra,* at p. 972.)

Following the decision in *Lewis,* the Legislature enacted S.B. 775 in part to codify the holding in *Lewis* regarding "the standard for determining the existence of a prima facie case,"[6] and to reaffirm that the "proper burden of proof at a resentencing hearing under [§ 1170.95] is proof beyond a reasonable doubt." (Stats. 2021, ch. 551, § 1.) As amended by S.B. 775, section 1170.95, subdivision (d)(3), which governs the proceedings following the issuance of an order to show cause, provides: "A finding that there is substantial evidence to support a conviction for murder . . . is insufficient to prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing."

In light of the foregoing, we agree with the parties that our holding in *Gonzales I* that substantial evidence supported a theory of second degree malice aforethought murder does not refute, as a matter

---

[6]     It is unclear what the Legislature intended when it declared that S.B. 775 would codify the holding of *Lewis* regarding "the standard for determining the existence of a prima facie case." The *Lewis* Court never formulated a standard for what constitutes a prima facie showing of entitlement to relief: "We are not asked to resolve what is substantively required under subdivision (a)(3); here we only address if, in assessing whether the petitioner has made a prima facie case for relief under section 1170.95, subdivision (c), the court may consider documents in the record of conviction if they are relevant to the underlying substantive question." (*Lewis, supra,* 11 Cal.5th at p. 972, fn. 6.)

of law, appellant's assertion at the prima facie stage of review that he could not be convicted under the current law. Our prior holding indicates only that the record contained enough evidence to support a still-valid theory of second degree murder. It does not, as a matter of law, refute appellant's assertion that he is eligible for relief. (See *Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1008 ["[i]n assessing how the evidence reasonably could have been evaluated by the trier of fact, an appellate court . . . must indulge reasonable inferences that the trier of fact might have drawn from the evidence"].)

Moreover, there is no readily ascertainable fact in the record of conviction to demonstrate that the jury did not rely on the natural and probable consequences doctrine. (See *People v. Secrease* (2021) 63 Cal.App.5th 231, 244, 246–247, rev. granted, S268862, June 30, 2021.)

In sum, we conclude that the trial court erred by summarily denying appellant's petition for resentencing. We reverse the order denying appellant's petition, and remand to the trial court with directions to issue an order to show cause and proceed in accordance with section 1170.95. (See *Lewis, supra*, 11 Cal.5th at p. 962.)

//

//

//

//

//

//

## DISPOSITION

The order summarily denying appellant's petition for resentencing under section 1170.95 is reversed. The matter is remanded to the trial court with directions to issue an order to show cause and proceed in accordance with section 1170.95.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


                                    WILLHITE, Acting P. J.

We concur:


COLLINS, J.


CURREY, J.

12